## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MICHAEL JOHNSON Individually and on Behalf of Others Similarly Situated,<br><br>v.<br><br>ANADARKO PETROLEUM CORPORATION, OCCIDENTAL PETROLEUM CORPORATION, and L & C SAFETY, INC. d/b/a STANDARD SAFETY & SUPPLY. | Case No.: _____<br><br>Jury Trial Demanded |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Michael Johnson (Plaintiff) brings this lawsuit to recover unpaid overtime wages and other damages from Anadarko Petroleum Corporation (Anadarko), Occidental Petroleum Corporation (Occidental), and L & C Safety Inc. d/b/a Standard Safety & Supply (L & C) (collectively, "Defendants") under the Fair Labor Standards Act (FLSA).

2. Plaintiff worked for Defendants as a Safety Consultant.

3. Plaintiff worked for Defendants through worked through L & C.

4. Defendants did not pay Plaintiff and its other Safety Consultants overtime as required by the FLSA.

5. Instead of paying overtime as required by the FLSA, Plaintiff and its other Safety Consultants were paid a flat daily rate for all hours worked in a workweek, including those in excess of 40 in a workweek.

6. This collective action seeks to recover the unpaid overtime wages and other damages owed to those Safety Consultants who worked for Defendants during the relevant period.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute. 29 U.S.C. § 216(b).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Occidental maintains its corporate headquarters in this District and Division.

## PARTIES

9. Plaintiff worked for Defendants as a Safety Consultant from approximately January 2018 until April 2021.

10. Throughout his employment, Plaintiff was staffed to Anadarko and the Occidental by L & C.

11. Throughout his employment with Defendants, Plaintiff was paid a flat daily rate for all the hours he worked including those in excess of 40 in a workweek.

12. Plaintiff's consent to be a party plaintiff is attached as Exhibit 1.

13. Plaintiff brings this FLSA collective action on behalf of himself and all other similarly situated Safety Consultants who were paid pursuant to Defendants' day-rate compensation plan. These safety consultants were paid a flat amount for each day worked for Defendants and did not receive overtime compensation for all the hours they worked in excess of 40 hours each week in violation of the FLSA.

14. The FLSA class of similarly situated employees Plaintiff seeks to represent consists of:

> **All Safety Consultants employed by, or working on behalf of, Anadarko and Occidental who were staffed by L & C Safety and paid a day rate pay at any time during the last 3 years** (the "Putative Class Members").

15. Members of the proposed collective can be readily ascertained from Defendants' records.

16. Occidental is a Delaware corporation that acquired Anadarko.

17. Occidental has its headquarters in Houston, Texas.

18. L & C is a Texas Company with its headquarters in Odessa, Texas.

19. Anadarko and Occidental may be served with process by serving its registered agent for service of process: C T Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

20. L & C may be served with process by serving its registered agent for service of process: Tyler Barcena, at 7101 N. Cr West, Odessa, Texas 79764, or wherever he may be found.

### FLSA COVERAGE

21. At all times hereinafter mentioned, Defendants were and are an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all times hereinafter mentioned, Defendants were and are an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. At all relevant times, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

24. At all relevant times, Defendants have, and have had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, hard hats, smart phones/devices, computers, etc.) that have been moved in or produced for commerce.

25. In each of the past three years, Defendants' annual gross volume of sales has exceeded $500,000.

26. At all relevant times, Plaintiff and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

27. Defendants uniformly applied its policy of paying the Putative Class Members, including Plaintiff, a day rate with no overtime compensation.

28. At all relevant times hereinafter mentioned, Defendants treated Plaintiff and the Putative Class Members as employees and uniformly applied their day-rate pay practice to Plaintiff and the Putative Class Members.

29. Whether Defendants did not consider Plaintiff and the Putative Class Members as its employees does not alter their status as employees for purposes of this FLSA collective action.

30. Defendants applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

31. By paying the Putative Class Members a day rate with no overtime compensation, Defendants violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

32. As a result of this policy, Plaintiff and the Putative Class Members do not receive overtime as required by the FLSA.

33. The uniform compensation scheme of paying its Putative Class Members a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

34. Defendants treated all the Putative Class Members (including Plaintiff) as employees by setting their work schedules, controlling their job assignments, withholding taxes from their pay, and maintaining their personnel records.

35. Plaintiff and the Putative Class Members reported to Defendants' supervisors.

**FACTS**

36. Occidental Petroleum Corporation acquired Anadarko in 2019.

37. Prior to this acquisition, Anadarko was one of the largest independent oil and natural gas exploration and production companies in the world, operating throughout the United States, including in Texas.

38. To achieve its business objectives, Anadarko and Occidental hire personnel (like Plaintiff) to perform safety services on its behalf.

39. Anadarko and Occidental used L & C as a staffing agency.

40. Plaintiff and the Putative Class Members performed safety services for Defendants.

41. As a safety consultant, Plaintiff was responsible for site security.

42. Plaintiff's job duties were akin to a lifeguard.

43. Plaintiff did not supervise any of Defendants' workers.

44. Like Plaintiff, the Putative Class Members did not supervise Defendants' other workers.

45. Defendants rely on Plaintiff and the Putative Class Members to ensure the safe transportation of goods in interstate commerce.

46. Defendants' goods include oil and gas which travel through pipelines across state lines.

47. Plaintiff and the Putative Class Members were responsible for the safe transportation of Defendants' goods through their job duties of implementing Defendants' safety procedures.

48. Plaintiff and the Putative Class Members did not implement their own safety procedures.

49. Instead, Plaintiff and the Putative Class Members relied on Defendants, Defendants' clients, and federal safety policies and procedures.

50. Plaintiff and the Putative Class Members used tools, equipment, and consumables in their work interstate on oil and gas and related infrastructure.

51. Plaintiff and the Putative Class Members use their vehicles to carry tools, equipment, and consumables that are used on the oil and gas transportation network of pipelines and related infrastructure.

52. Plaintiff and the Putative Class Members work alongside other workers who are themselves engaged in building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

53. Defendants cannot operate well sites and pipelines and allow their goods to travel within interstate commerce without the job duties performed by Plaintiff and the Putative Class Members.

54. Plaintiff and the Putative Class Members are essential to Defendants' operations.

55. Plaintiff and the Putative Class Members' duties are vital to allowing oil and gas to travel from the oil and gas fields to refineries.

56. Defendants' entire industry is related to the exploration, production, and transportation of oil and gas goods.

57. Plaintiff and the Putative Class Members are regularly a part of interstate commerce.

58. Plaintiff and the Putative Class Members operate vehicles that are crossing state lines.

59. Plaintiff and the Putative Class Members' job duties directly relate to the safe transportation of Defendants' goods.

60. If Plaintiff and the Putative Class Members do not perform their job duties correctly, the well sites and pipelines infrastructure used by Defendants could explode, causing serious personal and financial harm.

61. Throughout his employment with Defendants, Plaintiff was paid on day rate basis.

62. On a day-to-day basis Plaintiff and the Putative Class Members reported to and took their working orders from Anadarko, Occidental, and L & C

63. Plaintiff and the Putative Class Members regularly worked more than 40 hours a week while performing services for Defendants.

64. Indeed, Defendants' Putative Class Members often worked 12 hour shifts for 6 to 7 days per week.

65. For example, Defendants directed Plaintiff to work 12 or hour shifts for up to a week at a time.

66. Anadarko and Occidental, through L & C, paid all the Putative Class Members pursuant their day rate pay plan with no additional compensation for overtime hours regardless of the number of hours worked that workweek.

67. Plaintiff and the Putative Class Members do and did not receive a salary.

68. If Plaintiff and the Putative Class Members did not work, they did not get paid.

69. Plaintiff and the Putative Class Members received a day rate.

70. Plaintiff and the Putative Class Members did not receive overtime pay until Defendants changed their pay practice.

71. This is true despite the fact that Plaintiff and the Putative Class Members regularly worked more than 12 hours a day, 7 days a week.

72. Plaintiff and the Putative Class Members received the same daily rate each day regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

73. Plaintiff and the Putative Class Members were not paid on a salary basis.

74. Plaintiff and the Putative Class Members do not, and never have, received guaranteed weekly compensation from Defendants.

75. Plaintiff and the Putative Class Members work in accordance with the schedule set by Defendants.

76. Plaintiff's work schedule is typical of the other Putative Class Members' schedules.

77. Defendants control Plaintiff and the other Putative Class Members' pay.

78. Likewise, Defendants control Plaintiff and the Putative Class Members' work.

79. Defendants require Plaintiff and the Putative Class Members to follow their policies and procedures.

80. Plaintiff and the Putative Class Members' work must adhere to the quality standards put in place by Defendants.

81. As such, Plaintiff and the Putative Class Members were jointly employed by Defendants.

82. Plaintiff and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other safety consultants) to perform their job duties.

83. Very little skill, training, or initiative was required of Plaintiff and the Putative Class Members to perform their job duties.

84. Virtually every job function was pre-determined by Defendants and federal regulations, including the tools and equipment to use at a jobsite, the data to compile, the schedule of work, and other related work duties.

85. Plaintiff and the Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters and were required to follow Defendants' and federal regulation policies, procedures, and directives.

86. Plaintiff and the Putative Class Members performed routine job duties that were largely dictated by Defendants and federal law.

87. The work Plaintiff and the Putative Class Members perform is an essential part of Defendants' core business.

88. During Plaintiff's employment with Defendants, Defendants jointly exercised control over all aspects of his job like an employee.

89. In fact, in 2021, Defendants changed the classification of Plaintiff from an independent contractor to a W-2 employee.

90. Defendants did not require any substantial investment by Plaintiff for him to perform the work required of him.

91. More often than not, Plaintiff and the Putative Class Members utilized equipment provided by Defendants to perform their job duties.

92. Plaintiff and the Putative Class Members did not provide the equipment they worked with on a daily basis. Defendants made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which they worked.

93. Plaintiff and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and insurance.

94. Plaintiff and the Putative Class Members were economically dependent on Defendants during their employment with Defendants.

95. Defendants controlled Plaintiff's opportunity for profit and loss by dictating the days and hours he worked and the rate and manner he was paid.

96. Plaintiff and the Putative Class Members' earning opportunity was based on the number of days Defendants scheduled them to work.

97. Defendants set Plaintiff and the Putative Class Members' rates of pay, their work schedule, and effectively prevented (or outright prohibited) them from working other jobs for other companies while they worked on jobs for Defendants.

98. Throughout his employment, Defendants controlled all of the significant or meaningful aspects of the job duties Plaintiff performed.

99. Plaintiff and the Putative Class Members were not employed by Defendants on a project-by-project basis.

100. In fact, Plaintiff was regularly on call for Defendants and was expected to drop everything and work whenever needed.

101. Defendants' records reflect the days Plaintiff and the Putative Class Members worked each workweek and pay period.

102. Plaintiff and the Putative Class Members perform similar safety duties for Defendants.

103. At all relevant times, Defendants maintained control over Plaintiff and the Putative Class Members via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

104. Plaintiff and the Putative Class Members do not have the power to hire or fire any employees.

105. Plaintiff's working relationship with Defendants is similar to Defendants' relationship with the other Safety Consultants.

106. All of Defendants' Safety Consultants perform duties like those Plaintiff performed including inspecting onsite personnel's equipment to ensure they were up to Defendants' and federal standards, holding safety meetings, create reports based on Defendants' forms, and ensuring Defendants' safety policies and procedures were being met.

107. Plaintiff and the Putative Class Members did not manage other wellsite personnel.

108. The Putative Class Members all worked similar hours and were denied overtime as a result of the same illegal day rate pay plan.

109. The Putative Class Members regularly worked in excess of 40 hours in a workweek.

110. Defendants knew Plaintiff and the Putative Class Members regularly worked more than 40 hours in a week.

111. Instead of paying the Putative Class Members overtime, they were only paid a flat daily rate for all hours worked, including those in excess of 40 in a workweek.

112. As a result, Defendants failed to pay the Putative Class Members proper overtime compensation for hours worked in excess of 40 in a workweek.

113. Defendants knew, or showed reckless disregard for, whether the Putative Class Members were entitled to overtime under the FLSA.

114. Anadarko and Occidental have been sued for this same day rate pay practice before.

115. Nonetheless, Plaintiff and the Putative Class Members were not paid overtime for while working for Defendants.

116. Defendants were aware of the requirements of the FLSA.

117. Defendant, L & C changed its classification of Plaintiff in 2021.

118. Defendants did not investigate the legality of its classification of Plaintiff and the Putative Class Members as exempt from overtime pay or if they were Defendants' employees until at least 2021.

119. Defendants recklessly disregarded its FLSA obligations by employing Plaintiff and the Putative Class Members on a day rate basis.

120. Defendants willfully violated the FLSA.

### FLSA VIOLATIONS

121. Defendants' day rate pay plan violates the FLSA because Putative Class Members and the Putative Class Members did not receive overtime pay for the hours they worked over 40 hours in a week.

122. Putative Class Members knew, or showed reckless disregard for whether, their day rate pay plan violated the FLSA.

123. Defendants' failure to pay overtime compensation to the Putative Class Members was not based on any reasonable interpretation of the law.

124. Nor was Defendants' decision not to pay overtime made in good faith.

125. Accordingly, Plaintiff and all those who are similarly situated are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorney's fees, and costs.

## COLLECTIVE ACTION ALLEGATIONS

126. Numerous employees have been denied overtime by Defendants' day rate pay plan.

127. From his observations and experience working for Defendants, Plaintiff is aware that their illegal practices or policies have been imposed on the Putative Class Members.

128. The Putative Class Members all regularly worked in excess of 40 hours per week and received only their flat daily rates for all hours worked.

129. These employees are similarly situated to Plaintiff in terms of *relevant* job duties, pay provisions, and employment practices.

130. Defendants' failure to pay overtime as required by the FLSA results from a generally applicable, systematic pay plan that is not dependent on the personal circumstances of the Putative Class Members.

131. Thus, Plaintiff's experiences are typical of the experiences of the Putative Class Members.

132. Even though, the Putative Class Members all perform safety services for Defendants, the specific job titles or precise job locations of the various Putative Class Members do not prevent collective treatment.

133. Plaintiff has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Members, Plaintiff has an interest in obtaining the unpaid overtime wages owed to him under the FLSA.

134. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

135. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Defendants will reap the unjust benefits of violating the FLSA.

136. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective.

137. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

138. All Putative Class Members, regardless of their precise job requirements, location worked, or rates of pay, are entitled to overtime for hours worked in excess of 40 in a week.

## JURY DEMAND

139. Plaintiff demands a trial by jury.

## RELIEF SOUGHT

140. Wherefore, Plaintiff prays for:

   (a) an order allowing Plaintiff's FLSA claims to proceed as a collective action and directing notice to the other Putative Class Members;

   (b) judgment finding Defendants in violation of the FLSA;

   (c) judgment finding Defendants liable to Plaintiff and the Putative Class Members for unpaid overtime, and an equal amount of liquidated damages;

   (d) judgment awarding Plaintiff and the Putative Class Members reasonable attorney's fees and costs of this action;

(e) judgment awarding Plaintiff and the Putative Class Members pre- and post-judgment interest at the highest rates allowed by law; and

(f) such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 24014780
Federal ID No. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Federal ID No. 1093163
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Federal ID No. 21615
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**